**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN S. POULOS, SB# 154689
   E-Mail: John.Poulos@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833
Telephone:   916.564.5400
Facsimile:   916.564.5444

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
KATHERINE C. DEN BLEYKER, SB# 257187
   E-Mail: Katherine.DenBleyker@lewisbrisbois.com
OMAR M. ANIFF, SB# 315446
   E-Mail: Omar.Aniff@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for HALIBURTON
INTERNATIONAL FOODS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| HALIBURTON INTERNATIONAL FOODS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD MARASCO, an individual; SEVILLO FINE FOODS, Inc., a Utah Corporation, and DOES 1-25, inclusive. <br><br> Defendant. | CASE NO. 5:20-CV-01069 <br><br> **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL:** <br><br> 1. Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.; <br> 2. Misappropriation of Trade Secrets in Violation of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq.; <br> 3. Breach of Contract; <br> 4. Intentional Interference with Contractual Relations; <br> 5. Intentional Interference with Prospective Economic Relationship; <br> 6. Breach of Fiduciary Duty and Duty of Loyalty; <br> 7. Breach of Fiduciary Duty and Duty of Care; <br> 8. Unjust Enrichment; <br> 9. Preliminary and Permanent Injunctive Relief. |

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Plaintiff HALIBURTON INTERIONAL FOODS, INC. ("HIF"), by and

2  through its undersigned counsel, hereby bring this Complaint for preliminary and

3  permanent injunctive relief, declaratory relief, and damages against Defendants

4  RICHARD MARASCO, SEVILLO FINE FOODS, INC., and DOES 1-25

5  (collectively as "Defendants") and, in support thereof, aver as follows:

6                          **I.    THE PARTIES**

7    1.    Plaintiff HIF is a corporation organized and existing under the laws of

8  the state of California, maintaining its principal place of business in Ontario,

9  California.

10    2.    Plaintiff is informed and believes, and on that basis alleges, that

11  Defendant Richard Marasco ("Defendant Marasco") is an individual residing in

12  Ogden Valley, Utah.  Defendant Marasco was employed by HIF from 2010 to

13  January 28, 2020.  Prior to his departure from HIF, Defendant Marasco was the

14  Executive Vice President.  Plaintiff is informed and believes, and on that basis

15  alleges, that Defendant Marasco is currently serving as a Director on the Board of

16  Directors of Defendant Sevillo Fine Foods, Inc.

17    3.    Plaintiff is informed and believes, and on that basis alleges, that

18  Defendant Sevillo Fine Foods, Inc. ("Defendant Sevillo") is a corporation organized

19  and existing under the laws of the state of Utah, maintaining its principal place of

20  business in Midwale, Utah.

21    4.    Plaintiff is informed and believes, and on that basis alleges, that Does

22  1-25 are Defendant Sevillo directors, officers, and employees who reside in Utah.

23                **II.    JURISDICTION AND VENUE**

24    5.    The Court has subject matter jurisdiction over this civil action pursuant

25  to 28 U.S.C. § 1331 because this action involves claims asserted pursuant to the

26  federal Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*).

27    6.    The supplemental jurisdiction of the Court is invoked pursuant to 28

28  U.S.C. § 1367 to consider Plaintiff's claims under California common law, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

1   California Uniform Trade Secret Act, and other California statutes.

2       7.     The Court has personal jurisdiction over Defendants pursuant to Fed.

3   R. Civ. P. § 4(k)(1)(A) as Defendants all have minimal contacts with the State of

4   California such that summons to this Court would not offend due process and

5   notions of fair play. (*International Shoe v. Washington*, 326 U.S. 310 (1945).)

6   Defendant Marasco has directed his tortious conduct towards HIF, a California

7   corporation, and damage to Plaintiff has occurred in California. Further, Defendant

8   Marasco acquired his knowledge of HIF's trade secrets during his tenure at HIF in

9   California. Second, Plaintiff is informed and believes, and on that basis alleges that

10   Defendant Sevillo and Does 1-25 routinely and continuously direct their actions

11   towards the forum state in furtherance of Defendant Sevillo, including, but not

12   limited to, contracting with California-based vendors and customers. Further,

13   Defendant Sevillo operates an office in Tiburon, California.

14       8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)

15   because Plaintiff HIF is a California corporation with its principal place of business

16   in this judicial district and a substantial part of the events or omissions giving rise to

17   the claims occurred here.

18                **III.**    **FACTUAL ALLEGATIONS**

19                     **Summary of the Facts**

20       9.     Established in 1992, HIF has been on the forefront of large-scale food

21   production and boasts a large and diverse product line. For nearly 30 years, HIF has

22   been providing its products and services to the country's largest multi-unit

23   restaurant operators and restaurant groups.

24      10.     HIF's owner and president, Ian Schenkel ("Mr. Schenkel") is a highly

25   regarded engineer and industry leader in food manufacturing and process design.

26   His innovative ideas have lead to the development of many proprietary processes

27   and unique custom machinery that differentiate HIF from the industry. These

28   processes and machine design details have lead to the development of several

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  hundred new food products as well as cost saving manufacturing methods that give
2  HIF a unique advantage.

3      11.    HIF creates unique and exclusive products for specific multi-unit
4  restaurant operators and restaurant groups that are not available to the rest of the
5  food industry.  Defendant Marasco had knowledge of these items, how they are
6  manufactured and which of HIF's customers they have been developed for.

7      12.    Over the years, HIF has established many customers, clients, and
8  vendors, and has developed relationships with these entities that have allowed HIF
9  to become the leader in its sphere.

10      13.    Defendant Marasco joined HIF in 2010 as the Culinary Director of the
11  company.  As a condition of his employment, he signed provisions of HIF's
12  employee handbook regarding HIF's confidential and proprietary trade secrets
13  policy.  See Ex. A.  In doing so, he expressly acknowledged the policy and agreed to
14  keep secret HIF's trade secrets and confidential information.  Further, as part of
15  these agreements, Defendant Marasco agreed that for a period of one year after his
16  decision to leave or termination, he was not to solicit business from any account or
17  client which is serviced by or is a client of HIF.

18      14.    As Executive Vice President, Defendant Marasco was directly involved
19  in managing and running HIF.  As the head of many departments, Defendant
20  Marasco was necessarily privy to confidential and proprietary trade secrets ranging
21  from HIF's vendor and client lists, confidential formulas, proprietary technology
22  and processes, confidential pricing, trade secrets and marketing and development
23  plans, amongst other confidential information.

24      15.    In or around January 2018, HIF's owner and president, Mr. Schenkel
25  took a leave of sabbatical and tasked Defendant Marasco with managing the entire
26  company.  During Mr. Schenkel's year and a half sabbatical, Defendant Marasco
27  completely mismanaged HIF resulting in at least five million dollars in losses.
28  During this time, Defendant Marasco arbitrarily cut production to well below the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4

1    level required to be profitable and sustainable.  He also failed to implement the

2    costing module of HIF's new enterprise management software.  Instead, under his

3    leadership, arbitrary and exaggerated unit cost data was inputted into the new

4    system.  As a result, under his leadership, HIF was overbidding on contracts, which

5    resulted in a loss of business and customer goodwill.

6         16.    After Mr. Schenkel returned from his sabbatical, Defendant Marasco

7    demanded that he be made permanent president of HIF.  After Mr. Schenkel rejected

8    his proposition, Defendant Marasco attempted to take over HIF by trying to

9    organize the management against Mr. Schenkel and making numerous false

10    representations.  Defendant Marasco also postured that he was going to perform a

11    hostile takeover of HIF with numerous investors and millions of dollars in

12    financing.

13         17.    However, on or around November 19, 2019, Defendant Marasco

14    announced he was resigning from HIF.  After failed attempts to retain Defendant

15    Marasco, his employment with HIF officially ended on or around January 28, 2020.

16    In February 2020, Mr. Schenkel was informed by Haliburton's largest customer that

17    Defendant Marasco was working for another vegetable company and that they were

18    soliciting HIF's vegetable business currently.

19         18.    Defendant Marasco joined Defendant Sevillo Fine Foods.  It is unclear

20    at what date Defendant Marasco joined Sevillo Fine Foods.  Defendant Sevillo Fine

21    Foods is a food manufacturer, manufacturing "Slow Roasted Tomatoes & Artisan

22    Vegetables."  This is a product that HIF did not manufacture.  This is a product that

23    HIF did not manufacture and therefore the businesses were non-competing for the

24    most part.  Around the time Defendant Marasco announced he was resigning from

25    HIF, Sevillo Fine Foods announced through their website and social media that they

26    were creating a line of Fire Roasted Vegetables, competing directly with HIF.  The

27    products were identical to the products HIF was currently manufacturing and HIF's

28    highest volume items were the first products Sevillo Fine Foods introduced.

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

19.     Shortly thereafter, on March 20, 2020 HIF was informed by one of its vendors that Mary Hessessey, the Business Development Manager of Defendant Sevillo had called and emailed the vendor in an attempt to contract for similar quantities of a particular raw ingredient that HIF orders for one of HIF's own, proprietary products, one that is sold to HIF's largest customer.  When asked how Defendant Sevillo knew of the vendor, the buyer was mysteriously vague and coy about the details.  The fact that a "Business Development Manager" called rather than a purchasing person raised a red flag for HIF's vendor, who immediately alerted HIF.

20.     Based upon the foregoing, HIF is informed and believes that Defendant Marasco has breached his non-disclosure agreement and misappropriated HIF's trade secrets.  HIF is also informed and believes that due to Defendant Sevillo and Does 1-25 knowledge that such confidential and proprietary information constituted trade secrets, their use of this information also constituted misappropriation of trade secrets as well.

## HIF's Business and Trade Secrets

21.     HIF is one of the leaders in large-scale food manufacturing, and is based in Ontario, California.  HIF specializes in producing food solutions and products that are integrated and used by multi-restaurant operators and restaurant corporations throughout the country.  HIF's extensive product line is diverse and includes fire-roasted vegetables and fruits, pickled-vegetables, sauces, salsas, and soups, amongst other products.

22.     HIF was founded in 1992 by the owner and Chief Executive Officer, Ian Schenkel ("Mr. Schenkel.").  Through his hard work, investment in the company, and dedication to the trade, Mr. Schenkel has turned HIF into the nation's premiere large-scale food manufacturer.  HIF routinely contracts with nationally-recognized restaurant companies to produce millions of pounds of food for its clients.  HIF on average produces about one million pounds of food each day at its

6

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  state-of-the-art food manufacturing facility.

2      23.    HIF's ability to offer high-quality and varied food products throughout

3  the year at competitive prices is due to HIF's expertise, skill, innovation, and the

4  strategic relationships and partnerships it has forged in the industry.

5      24.    In the nearly thirty years it has been in business, HIF has developed

6  strategic relationships and partnerships with vendors for the steady supply of

7  ingredients it needs to be able to offer its clients the best products available.  HIF

8  has invested its time, money, and resources in establishing and cultivating these

9  strategic relationships.  HIF routinely works with their vendor partners to advance

10  quality and food safety initiatives, improve processes and yields to control costs and

11  advance quality.  And in return, these relationships have lead to HIF having year-

12  round access to exclusive supply chains of difficult to source ingredients in the

13  quantities it needs at favorable and exclusive rates.  This consistent and reliable

14  source of supplies has allowed HIF to offer the products and solutions its customers

15  want and has allowed it to supply the nation's restaurants all year.  This has allowed

16  HIF to grow in market share and increase its goodwill with both its vendors and

17  clients.  As such, a large part of HIF's competitive advantage is derived from its

18  vendor relationships.

19      25.    HIF's competitive advantage is further derived from its relationships

20  with its clients.  HIF has invested hundreds of millions of dollars in its technology,

21  infrastructure, quality and food safety systems and its workforce to enable it to

22  provide the solutions and products its clients want and need.  Additionally, HIF has

23  expended a great deal of time, money, and effort identifying, cultivating, and

24  servicing the needs of its clients and prospective clients.  Through the years, HIF has

25  garnered its clients' goodwill and has been able to negotiate contracts at exclusive

26  and extremely favorable rates to HIF.  These confidential, bargained-for rates has

27  allowed HIF to secure contracts where its competitors have not and has allowed HIF

28  to grow and lead the industry.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

7

26.    HIF has compiled and maintains all of these contracts, vendor/client identities, client/vendor contacts, order histories, specifications, preferences, and pricing, amongst other data, in its enterprise database.  In addition to this confidential data, HIF's confidential and proprietary trade secrets include all other information that is not know by its competitors or within the food manufacturing business generally, and from which HIF derives substantial competitive value from this information not being known.  This includes, but is not limited to:  the criteria and formulae used by the HIF in pricing its products and services; recipes; the development of products and research; the pricing of special packages that HIF has negotiated; lists of customers and composition and organizations of accounts' businesses; sensitive details concerning the structure, conditions, and extent of their existing productions and services; service arrangements and other data showing the particularized requirements; and preferences of HIF accounts.  This sensitive data is hereinafter referred to as HIF's "Trade Secrets."

27.    HIF derives substantial benefit from maintaining the confidentiality of its Trade Secrets.  Disclosure and use of these Trade Secrets by parties other than HIF would undoubtedly cause irreparable harm to HIF.

28.    HIF Trade Secrets, all of which are products of substantial time and expense, are not generally known to the public.  HIF Trade Secrets are not readily ascertainable in HIF's industry, in any type of trade or public directory, or any other publically available source.

29.    HIF's Trade Secrets would (and do) have substantial value if acquired by any competitor, including Defendant Sevillo, as these Trade Secrets would allow a competitor (and have allowed Defendants) readily to:  (a) target HIF's cherry-picked and vetted vendors, (b) inform itself of the specific person(s) to contact at the HIF's vendors, (c) inform itself of the vendor's preferences and HIF's order histories including which ingredients and in what quantities it orders, (d) inform itself of HIF's negotiated vendor rates, and (e) inform itself of HIF's purchasing

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   history to undercut HIF's contracts and interfere with HIF's ability to purchase
2   ingredients critical to its business.

3       30.   Similarly, competitors could gain analogous client-related data which it
4   could used to undercut HIF's current contracts or unfairly outcompete HIF for future
5   contracts by improperly using HIF's data to offer their products at lower prices or in
6   larger quantities to exclude HIF's share of the relevant business opportunity.

7       31.   Additionally, HIF is informed and believes and on that basis alleges
8   that its Trade Secrets would also (and do) have substantial value as a business
9   roadmap if acquired by any competitor, as the Trade Secrets would allow a
10  competitor (and have allowed Defendant) to: (a) inform itself of, and allow it to take
11  advantage of HIF's business targets, development and extension plans and goals, (b)
12  glean and discern other confidential financial data, and (c) otherwise allow the
13  competitor to profit from HIF's extensive time and effort investment to establish and
14  growing its business.

15      32.   Moreover, in the highly-competitive large-scale food production
16  industry in which HIF operates, the pool of potential vendors who can supply the
17  ingredients and supplies in the quantities and at the prices necessary for HIF to meet
18  the demands of its clients is small and exclusive.  Any interference and disruption of
19  its vendor relationships will necessarily cause a ripple effect through HIF's entire
20  business operation and will cause it to lose the hard-earned goodwill it has with its
21  clients.

22      33.   Similarly, being a large-scale food producer that must produce
23  hundreds of thousand pounds of food per day in order to remain profitable, HIF's
24  client base is also very limited to multi-restaurant operators and large restaurant
25  corporations who have a need for such volume.  As such, the pool of HIF's clients is
26  also limited to a relatively few institutional clients who contract with HIF for their
27  specific product needs.  Any disruption to HIF's client relations will necessarily
28  have a domino-effect on HIF's business and its ability to continue to operate.

9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

34.     HIF spends millions of dollars each year on development of new products, formulas, new processing methods and innovative process development. Mr. Schenkel is a mechanical engineer and has developed most of the proprietary process technology that created many of the unique products that HIF manufactures. Many of these unique processes, unique machinery and unique knowledge have created products that are exclusive to HIF and as such, HIF is the market leader in many of these categories.  As such, HIF's Trade Secrets are valuable to HIF and their value lies primarily in being kept secret and not generally know.  For that reason, HIF has taken and continues to take, careful, substantial, and reasonable steps to safeguard the secrecy of its Trade Secrets, including but not limited to: (a) securing the sensitive areas of HIF's business site through the use of security and security-badged entrances; (b) providing employees access to its database on a need to know basis and ensuring only authorized access by requiring individualized login credentials; (c) requiring, as a condition of employment, that all employees promise not to use or disclose this information, except in the performance of their duties for HIF; (d) requiring, as a condition of employment, that all employees execute Confidentiality/Non-Disclosure Agreements ("NDAs"), which instruct HIF employees not to disclose, reproduce or use confidential and proprietary trade secret information without HIF's consent; (e) requiring, as a condition of their employment, that employees execute employment agreements ("Employment Agreements") under which employees personally assume a legal obligation to protect HIF's confidential and proprietary Trade Secrets from disclosure and that limit employees' ability to unfairly and improperly exploit their access to such information; (f) limiting access and/or restricting access to this information by employees and contractors/vendors on a need-to-know basis; (g) requiring security passwords to access HIF's databases, other electronic systems, networks, servers, and computers; (h) requiring Trade Secrets to be kept in secure locations when not in use; (i) requiring contracted parties who are provided access to HIF's Trade

10

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

1  Secrets on a need-to-know basis to sign strict non-disclosure and confidentiality
2  agreements imposing an obligation on such parties to protect such information from
3  disclosure; and (j) issuing cease and desist letters to former employees, including
4  Defendant Marasco, suspected of misappropriating Trade Secrets and demanding
5  the return of such information.

6          **DEFENDANT MARASCO'S CONTRACTUAL OBLIGATIONS**

7          35.    Defendant Richard Marasco joined HIF in 2010 as the Culinary
8  Director of the company.

9          36.    As a condition of his employment with HIF, Defendant Marasco signed
10 an employment agreement with HIF that included provisions protecting HIF's Trade
11 Secrets and other confidential information (the "Marasco Agreement'). A true and
12 correct copy of the Marasco Agreement is attached to this Complaint as Exhibit A.

13         37.    By signing the Marasco Agreement, Defendant Marasco expressly
14 agreed, acknowledged, and represented that as part of his acceptance of
15 "employment with Haliburton International Corp. [sic] [he] must agree not to
16 disclose any confidential, proprietary, or trade secret information of Haliburton
17 International Corp."

18         38.    Defendant Marasco expressly agreed, acknowledged, and represented
19 that he must: "(a) not use any such Confidential Information for [his] personal
20 benefit or for the benefit of any person or entity other than the Company, and (b) use
21 [his] best efforts to limit access to such Confidential Information to those who have
22 a need to know it for the business purposes of the Company. In addition, you should
23 minimize those occasions on which you take documents, computer disks, or a laptop
24 containing such Confidential Information outside the office. On those occasions
25 where it is necessary, consistent with the best interests of the Company and doing
26 your job effectively, to take documents, a computer disk, or a laptop containing
27 Confidential Information outside the office, all appropriate precautionary and
28 security measures should be taken to protect the confidentiality of the information."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

11

39.     Further, Defendant Marasco expressly agreed, acknowledged, and represented that: "[he] agrees to continue to maintain the confidentiality of this information and not to directly or indirectly use or divulge, disclose or communicate such information to any person, firm, or corporation, even if their employment with Haliburton International Corp. terminates any reason."  By signing the agreement, Defendant Marasco agreed not to disclose any Trade Secrets or other confidential information even after his employment with HIF terminated for any reason.

40.     The Marasco Agreement further states and Defendant Marasco expressly agreed, acknowledged, and represented that: "In the event that [he] is terminated or decides to leave Haliburton International Corp. [sic] for a period of one (1) year from the date of his [] termination or decision to leave, [he] agrees that [he] will not directly or indirectly solicit business, on behalf of [his] own business behalf or on the behalf of another partnership, corporation, or otherwise, from any account or client which was or is an account, which is serviced by or is a client of Haliburton International Corp. [sic] nor shall any employee interfere with, raid, or otherwise solicit employees of Haliburton International Corp. [sic] to leave their employment with said corporation  notwithstanding that Haliburton International Corp. [sic] may be the former employer of the employee."

41.     Moreover, by the terms of the Marasco Agreement, HIF retains sole ownership of confidential and Trade Secret information, including, but not limited to,:  all contracts, documents, files, customer account records, customer lists, product lists, supplier documentation and the like, affecting or relating to the business of the agency or its customers which the employee of the agency prepared, used, constructed, observed, possessed or controlled.  By signing the Marasco Agreement, Defendant Marasco agreed that: "After termination, [he is] not permitted to retain copies of any confidential document, data, or materials in any format."

42.     In agreeing and promising not to use HIF's Trade Secrets except in the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

performance of his duties for HIF, Defendant Marasco agreed he will not, directly or indirectly, use HIF's Trade Secrets to: (i) identify former or current HIF clients or vendors for his personal benefit or the benefit of any other firm or entity; (ii) solicit or facilitate the solicitation of any former, current, or prospective clients or vendors of HIF of which Defendant Marasco came to know of through access to HIF's Trade Secrets during his employment with HIF, for his personal benefit or the benefit of any other firm or entity; and/or (iii) otherwise unfairly compete with HIF.

43.    Additionally, by signing the Marasco Agreement, Defendant Marasco agreed not to interfere with, raid, or otherwise solicit HIF employees within one year of the his separation from HIF.

## DEFENDANT MARASCO'S EMPLOYEMENT WITH HIF

44.    Defendant Marasco worked at HIF in various capacities including Executive Vice President from 2010 until January 2020.

45.    In the ten years of his employment with HIF, Mr. Schenkel worked closely and directly with Defendant Marasco. As essentially second in command, Defendant Marasco was entrusted with large swaths of HIF's operation. Defendant Marasco oversaw many departments and functional groups, and thus was required to have access to sensitive information including HIF's Trade Secrets. Further, Defendant Marasco, in overseeing many critical HIF functions, learned the inner workings of HIF's operation and gained invaluable experience in managing a large-scale food manufacturing company.

46.    Starting in or around February 2017 through December 2017, HIF was re-developing and restructuring its business in order to streamline production, produce less food-waste, bring labor costs down, and net higher profits. During this period, HIF held daily production meetings between Defendant Marasco, other executives, and various department managers. These meetings were held to gather information on the operation of HIF's plant processes, report the previous day's output values, and identify key metrics that needed to improve and how to improve

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

them.  One of theses critical metrics was the labor cost to production ratio.  Over the course of many months and hundreds of meetings later, Defendant Marasco and HIF executives arrived at the critical minimum daily production threshold required to break even.  This key figure was determined to be the bare minimum amount of production required to offset the cost of labor and raw ingredients each day.

**DEFENDNAT MARASCO'S BRIEF TENURE AS DE FACTO PRESIDENT**

47.    In or around December 2017, Mr. Schenkel temporarily relinquished his duties in order to spend some quality time with his family.  In his place, he gave Defendant Marasco the opportunity to run the entire company as the de facto president.

48.    In addition to running HIF, Defendant Marasco was given the crucial task of selecting and implementing a new Product Lifecycle Management (PLM) software to integrate with a the new enterprise management software that HIF was developing and implementing.  This new PLM software was the operating system and database where all of HIF formulas, quality metrics, vendor information, specification, production data, costing and Trade Secret in general would reside in this database.  Defendant Marasco selected the PLM software from LASCOM S.A. The system was to integrate directly with the new system, ERP system from JustFoods, and seamlessly migrate the existing data into new system.  In addition to overseeing the overall project, Defendant Marasco was directly responsible for implementing the costing and Bill of Material modules of the ERP system.  Once completed, these modules were to ensure that HIF unit cost data, financial metrics, and other confidential data were correct, up to date, and available to inform HIF's contract negotiations.

49.    In the year and a half that Defendant Marasco was acting president, HIF regressed resulting in net losses across the company.

50.    Despite being present at the previous daily production meetings, Defendant Marasco dramatically cut production outputs to levels well below the

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

output required to be sustainable.  As business was slowing, rather than cut production days to maintain sustainable production numbers, Defendant Marasco extended the number of days of production by slowing down the line speeds and reducing the output of the factory to unprofitable levels.  Most days, production output was a half to one-third less than the minimum threshold that Defendant Marasco helped established during the daily production meetings.  Defendant Marasco then cancelled the daily production meetings and withheld the production data from HIF's key managers, including Mr. Schenkel.

51.    Defendant Marasco was well-informed of the financial impacts of drastically reducing production below the minimum threshold identified many months earlier.  As part of HIF's executive team and the head of the production department, he was an essential part of the previous months' meetings, analysis, and decision making that eventually set the production threshold.  Yet, Defendant Marasco inexplicably cut production resulting in losses to HIF.  Defendant Marasco failed to exercise due care and reasonable diligence when ordering the reduction of production below sustainable levels.

52.    Furthermore, Defendant Marasco completely and utterly failed to implement the critical costing module of HIF's enterprise system migration.  Rather than integrate the LASCOM software with the new ERP system in order to transfer the crucial costing data, Defendant Marasco ordered and oversaw the input of inaccurate data instead.

53.    HIF is informed and believes that under Defendant Marasco's leadership, not only was the costing and bill of material module not fully functional, but each costing metric was wildly inaccurate and arbitrary.  As a result, the inventory value of HIF's manufactured items was being reported incorrectly in the ERP system resulting in widely inaccurate financial results.  When asked by Mr. Schenkel about why the inventory values were not correct, Defendant Marasco failed to disclose that the Lascom PLM system had never been complete and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

therefore the bill of material lists were wrong and inaccurate.  Instead, Defendant Marasco told Mr. Schenkel that he would investigate the cause and implement a solution.  The product persisted from July 2018 until Defendant Marasco's departure in December 2019.  The problem was finally identified after Defendant Marasco's departure and immediately fixed.  Defendant Marasco's failure to disclose or correct this issue, resulted the financial losses being concealed from Mr. Schenkel.

54.    HIF later discovered that because of the broken ERP system and arbitrary costs associated with the ingredients HIF purchases, HIF was overbidding and over ordering on ingredient purchases increasing costs and waste significantly. HIF was informed it was overbidding on vendor contracts by one of its customers who told HIF that its ingredient costs were much higher than normal.

55.    HIF is informed and believes that these higher ingredient costs hurt HIF's profits as it returned slimmer margins on its products.  HIF is was further harmed as it was unable to secure contracts it would have had it bid on ingredients using its proper costing metrics.  Furthermore, HIF lost goodwill as customers complained to it that it was bidding too high on the ingredients going into customers' end products HIF was producing.

56.    HIF is informed and believes that in the year and a half of Defendant Marasco's leadership, HIF lost over five million dollars worth of profit and was operating in the red.  Due to Defendant Marasco's failure to implement the financial module of the ERP system, HIF is still endeavoring to determine the exact amount it lost under his mismanagement.

57.    As a result of Defendant Marasco's failure to exercise his duty of care and perform due diligence as a reasonable president would have in his situation, HIF has had to once again hire an outside financial consultant to help it fix the broken ERP system and bring it back to profitability.

/ / /

/ / /

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**DEFENDANT MARASCO'S ATTEMPTED COUP D'ETAT OF MR. SCHENKEL AND ATTEMPTED HOSTILE TAKEOVER OF HIF**

58.    After Mr. Schenkel returned from his sabbatical, he found HIF in a worse state than when he left.  As discussed above, HIF was not performing at the level it needed to, was not turning a profit, and had sustained business losses. Further, HIF's costing and financial enterprise management system was nonoperational and required further time, money, and effort before it would be.

59.    Despite his mismanagement, Defendant Marasco approached Mr. Schenkel shortly thereafter and demanded that Defendant Marasco be made the permanent president of HIF.  Mr. Schenkel disagreed and rebuffed Defendant Marasco's demand.

60.    In the ensuing months, HIF is informed and believes that Defendant Marasco engaged in a campaign to attempt a coup d'etat of Mr. Schenkel. Defendant Marasco approached lower level managers and supervisors and attempted to turn them against Mr. Schenkel.  He would tell them that it was actually Mr. Schenkel who was mismanaging the business and that he would do a better job as president of HIF.

61.    Further, in an effort to unseat Mr. Schenkel and gain control of HIF, Defendant Marasco made numerous statements to HIF employees that Defendant Marasco had secured millions of dollars and investors who were ready to buy HIF from Mr. Schenkel for $50 million, a value way below the fair market value of HIF before Mr. Schenkel left.

**DEFENDANT MARASCO'S RESIGNATION AND EMPLOYMENT WITH DEFENDANT SEVILLO**

62.    After failing to become HIF's president, Defendant Marasco tendered his resignation on November 19, 2020.

63.    Despite a recent soured history between Defendant Marasco and Mr. Schenkel, HIF still harbored goodwill towards Defendant Marasco.  Further,

17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Defendant Marasco was valuable to HIF as he had developed a deep understanding of HIF's operation and its Trade Secrets. As such, in an attempt to retain Defendant Marasco as an employee, HIF kept Defendant Marasco on its payroll and allowed him to be on an extended leave of absence through the beginning of January 2020.

64. In or around January 28, 2020, Defendant Marasco served HIF with a demand letter in an attempt to extort HIF for a payout under the threat of potential litigation for alleged grievances Defendant Marasco allegedly perceived.

65. Defendant Marasco's demand letter tacitly indicated that he was no longer considering returning to HIF, and as such HIF took Defendant Marasco off of its payroll.

66. In or around late February, it came to HIF's attention that Defendant Marasco had joined Defendant Sevillo as a member of its Board of Directors.

67. HIF is also informed and believes that Defendant Marasco had relocated to the Greater Salt Lake City Area of Utah.

**DEFENDANTS' MISAPPRORIATION OF HIF'S TRADE SECRETS**

68. On or around March 20, 2020, HIF was informed by one of its vendors that Mary Hessessy, the Business Development Manager of Defendant Sevillo contacted the vendor inquiring into the very similar quantities of a particular raw ingredient that HIF purchases from that vendor.

69. The vendor reported that the transaction struck it as odd and out of place. The vendor asked the Business Development Manager of Sevillo Foods, Mary Hessessy how she came to know of the vendor, but she was deliberately vague and coy with her statements.

70. HIF is informed and believes that Defendant Marasco disclosed HIF's Trade Secret information to Defendant Sevillo and numerous unknown Doe Defendants who knowingly used this misappropriated information without HIF's consent.

71. HIF is informed and believes that Defendant Marasco knew or should

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  of known that HIF's vendor and client-related information were Trade Secrets

2  which he acquired through his high-level employment with HIF.  Defendant

3  Marasco know or should have known that as a consequence of being given access to

4  these Trade Secrets and his entering into the Marasco Agreement, he had a duty to

5  maintain the secrecy of the Trade Secrets.  In disclosing HIF's Trade Secrets,

6  Defendant Marasco breached the Marasco Agreement.

7       72.    HIF is informed and believes Defendant Sevillo and Does 1-25 knew or

8  should have known that HIF's vendor and client-related information were Trade

9  Secrets, as they had derived the Trade Secrets from or through a person who they

10  knew or should have known owed a duty to maintain the secrecy of the Trade

11  Secrets.  HIF is informed and believes that Defendant Sevillo and Defendant Does

12  1-25 then disclosed HIF Trade Secrets without its consent.

13  **DEFENDANT MARASCO'S SOLICITATION OF HIF CHEF ROBERT LE**

14  **SAGE AND SOLICITATION OF HIF'S CLIENT**

15       73.    On or around Tuesday, May 12, 2020, HIF Chef Robert Le Sage ("Mr.

16  Le Sage") informed HIF that he was resigning.  That following Thursday, May 14,

17  2020, Mr. Le Sage tendered his resignation and resigned the following day.

18       74.    Shortly before Mr. Le Sage's resignation, on May 13, 2020, a Senior

19  Buyer from one of HIF's clients who worked closely with Mr. Le Sage contacted

20  HIF.  The Senior Buyer asked HIF for a list of the inventory and special ingredients

21  that her employer would need to purchase if it were to terminate its contract with

22  HIF.

23       75.    On information and belief, Defendant Marasco either indirectly or

24  directly solicited Mr. Le Sage to resign from HIF and join Defendant Sevillo Fine

25  Foods, Inc.

26       76.    Further, on information and belief, Defendant Marasco then directly

27  solicited HIF's client by informing the client that Mr. Le Sage was leaving HIF and

28  joining Defendant Sevillo Fine Foods, Inc.

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

77.    Defendant Marasco's actions in soliciting Mr. Le Sage and HIF's client are in direct breach of the Marasco Agreement.

## I.

## (<u>Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.</u>)

### Against Defendants Marasco, Sevillo, and Does 1-25

78.    Plaintiff re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 77.

79.    HIF's Trade Secrets alleged above constitute trade secrets under the Defend Trade Secrets Act (18 U.S.C. §§ 1836 et seq.).

80.    HIF's Trade Secrets are valuable because they are not generally known or readily ascertainable, through proper means, to others who can profit from the use of the Trade Secrets.

81.    HIF has taken more than reasonable measures to maintain the secrecy of the information, including requiring computer access passwords to be used to open HIF computer systems and records, restricting access to its business premises, and having employees, including Defendant Marasco, sign agreements expressly prohibiting the use, removal, and disclosure of such information outside of HIF.

82.    The foregoing conduct of Defendants constitute an actual and threatened misappropriation and misuses of HIF's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

83.    Defendants' actions with respect to HIF's trade secrets, as alleged above, were a deliberate scheme and plan to deprive HIF of the benefits of HIF's own substantial investment and efforts and steal the fruits of HIF's labor.

84.    As a proximate result of Defendants' acts as alleged above, HIF to date has suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial.  As a further proximate result of

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  the misappropriation, HIF is informed and believes that Defendants have been

2  unjustly enriched as a result the misappropriation of HIF's Trade Secrets.  The

3  amount of this unjust enrichment cannot presently be ascertained.

4        85.    HIF is informed and believes that Defendants continue to possess, use,

5  and disclose HIF's misappropriated Trade Secrets.  Defendants' conduct therefore

6  threatens further wrongful misappropriation, use, disclosure, and destruction of

7  HIF's Trade Secrets.

8        86.    As a proximate result of Defendants' acts as alleged above, HIF will

9  continue to suffer actual damages in an amount to be proven at trial unless

10  Defendants are enjoined from any further misappropriation and use of HIF's Trade

11  Secrets.

12        87.    HIF has no adequate remedy at law for these injuries unless and until

13  Defendants are restrained from using HIF's misappropriated Trade Secrets in the

14  future and ordered to return any such information and property containing HIF's

15  Trade Secrets, because calculations of damages will be difficult and HIF will be

16  compelled to bring multiple suits to protect its interest.  HIF's damages are not

17  easily quantified but include, and are not limited to, lost profits and productivity as a

18  result of damage to its vendor relationships, goodwill, disruption of its operations,

19  and time and resources spent investigating Defendants' unlawful conduct, in an

20  amount to be proven at trial.

21        88.    HIF, therefore, is entitled to preliminary and permanent injunctions, as

22  prayed for herein, prohibiting Defendants from further acts of misuses and

23  disclosure of HIF's misappropriated Trade Secrets and ordering Defendants to

24  return such Trade Secrets to HIF immediately.

25        89.    HIF is informed and believes that Defendants' conduct was, and is,

26  malicious, fraudulent, deliberate and willful, as revealed by Defendants' conduct

27  described above.  HIF is therefore entitled to recover from Defendants exemplary

28  damages in the amount twice the total of the damages recovered for actual loss as

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

21

1    permitted by 18 U.S.C. § 18369(b)(3)(C).

2    90.    HIF is entitled to an award of attorneys' fees pursuant to 18 U.S.C. §

3    1836(b)(3)(D).

4    **II.**

5    **(Misappropriation of Trade Secrets in Violation of the California Uniform**

6    **Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq.)**

7    **Against Defendants Marasco, Sevillo, and Does 1-25**

8    91.    Plaintiff re-alleges and incorporates by this reference the allegations set

9    forth in Paragraphs 1 through 90.

10    92.    HIF's Trade Secrets alleged above constitute trade secrets under the

11    California Uniform Trade Secrets Act, Cal. Civil Code section 3426 et seq. as they

12    derive independent economic value, both actual and potential, from not being

13    generally known to the public or other persons who can obtain economic value from

14    its disclosure or use.  This information is a valuable asset in that it provides HIF a

15    competitive advantage over others.

16    93.    As set forth herein above, HIF has made reasonable efforts to maintain

17    the secrecy of its Trade Secrets through the use of confidentiality agreements and

18    policies, password-secured access to its computer terminals, and by restricting its

19    business premises to employees and those given special clearance.

20    94.    Defendants' actions with respect to HIF's Trade Secrets, as alleged

21    above, were a deliberate scheme and plan to deprive HIF of the benefits of HIF's

22    own substantial investment and efforts and steal the fruit of HIF's labor.

23    95.    As a proximate result of Defendants' acts as alleged above, HIF to date

24    has suffered, and will continue to suffer, actual damages, including, but not limited

25    to, loss of capital, loss of valuable business, loss of profits and future profits, and

26    loss of goodwill, in an amount to be proven at trial.  As a further proximate result of

27    the misappropriation, HIF is informed and believes that Defendants has been

28    unjustly enriched as a result the misappropriation of HIF's Trade Secrets.  The

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

1    amount of this unjust enrichment cannot presently be ascertained.

2        96.    HIF is informed and believes that Defendants continue to possess, use,

3    and disclose HIF's misappropriated Trade Secrets.  Defendants' conduct therefore

4    threatens further wrongful misappropriation, use, disclosure, and destruction of

5    HIF's Trade Secrets.

6        97.    As a proximate result of Defendants' acts as alleged above, HIF will

7    continue to suffer actual damages in an amount to be proven at trial unless

8    Defendants are enjoined from any further misappropriation and use of HIF's Trade

9    Secrets.

10       98.    HIF has no adequate remedy at law for these injuries unless and until

11   Defendants are restrained from using HIF's misappropriated Trade Secrets in the

12   future and ordered to return any such information and property containing HIF's

13   Trade Secrets, because calculations of damages will be difficult and HIF will be

14   compelled to bring multiple suits to protect its interest.  HIF's damages are not

15   easily quantified but include, and are not limited to, lost profits and productivity as a

16   result of damage to its vendor relationships, goodwill, disruption of its operations,

17   and time and resources spent investigating Defendants' unlawful conduct, in an

18   amount to be proven at trial.

19       99.    HIF, therefore, is entitled to preliminary and permanent injunctions, as

20   prayed for herein, prohibiting Defendants from further acts of misuses and

21   disclosure of HIF's misappropriated Trade Secrets and ordering Defendants to

22   return such Trade Secrets to HIF immediately.

23       100.   HIF is informed and believes that Defendants' conduct was, and is,

24   malicious, fraudulent, deliberate and willful, as revealed by HIF's conduct described

25   above.  HIF is therefore entitled to recover from Defendant exemplary damages in

26   an amount twice the total of the damages recovered for actual loss as permitted by

27   California Civil Code section 3426.3.

28       101.   HIF is entitled to an award of attorneys' fees pursuant to California

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

23

1    Civil Code section 3426.4.

2                                    **III.**

3                          (**Breach of Contract**)

4                      **Against Defendant Marasco**

5         102.   Plaintiff re-alleges and incorporates by this reference the allegations set

6    forth in Paragraphs 1 through 101.

7         103.   HIF and Defendant Marasco are parties to the Marasco Agreement.

8         104.   HIF has performed all of the terms and conditions required of HIF

9    under the Marasco Agreement.

10        105.    Defendant Marasco's obligations under the Marasco Agreement as to

11   the protection of the HIF's proprietary, confidential, and trade secret information,

12   and agreement not to solicit HIF employees or clients are valid, enforceable, and

13   binding on him.

14        106.   Despite his contractual agreements, Defendant Marasco materially

15   breached the Marasco Agreement based on the conduct described in the preceding

16   paragraphs by, among other things taking, misusing, transferring, disclosing, and/or

17   otherwise misappropriating HIF's Trade Secrets, soliciting Mr. Le Sage, and

18   soliciting HIF's client.

19        107.   HIF has been damaged by Defendant Marasco's breach of the Marasco

20   Agreement in an amount to be proven at trial.

21        108.   Because damages alone may not provide HIF with a complete or

22   adequate remedy, in addition to seeking damages HIF is also entitled to preliminary

23   and permanent injunctive relief prohibiting Defendant Marasco from directly or

24   indirectly breaching the Marasco Agreement.

25                                    **IV.**

26            (**Intentional Interference With Contract**)

27        **Against Defendant Marasco, Sevillo, and Does 1-25**

28        109.   Plaintiff re-alleges and incorporates by this reference the allegations set

24

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

forth in Paragraphs 1 through 108.

110.   HIF and its vendors have entered into valid and existing agreements that benefitted HIF economically, and likely would have continued to benefit HIF in the future.

111.   By virtue of his former position and duties at HIF, Defendant Marasco was aware of HIF's vendors, the supplies/ingredients HIF contracted for, and the rates vendors were providing to HIF, at all relevant times.

112.   By virtue of Defendant Sevillo and Does 1-25 misappropriating HIF's trade secrets, Defendant Sevillo and Defendant Does 1-25 were aware of HIF's vendors, the supplies/ingredients HIF was contracting for, and the rates the vendors were providing to HIF, at all relevant times.

113.   HIF is informed and believes, and thereon alleges, that Defendants intended to and did interfere with HIF's contracts with its vendors by misappropriating HIF's Trade Secret information in order to improperly pursue and secure the finite availability of vendors whose relationships and rates had been developed and negotiated by HIF at rates favorable to Defendant Sevillo.

114.   As a direct and proximate result of Defendants' wrongful conduct, HIF has suffered and continues to suffer economic losses, and other general and specific damages, including but not limited to, lost profits, lost revenue, lost business opportunities, among other damages, all in an amount to be determined according to proof at the time of trial.

115.   HIF alleges that Defendants' conduct alleged above were undertaken with the intent to injure, defraud, and permanently deprive HIF of its economic benefits and vendors, or such conduct was performed with a willful and conscious disregard of HIF's rights.  Such conduct constitutes clear and convincing evidence of outrageous, oppressive, malicious, and fraudulent conduct that entitled HIF to an award of punitive damages against Defendants in an amount sufficient to deter them from similar conduct in the future.

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**V.**

(<u>Intentional Interference with Prospective Economic Relations</u>)

**Against Defendant Marasco, Sevillo, and Does 1-25**

116.   Plaintiff re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 115.

117.   An economic and ongoing business relationship existed between HIF and is vendors of whom HIF regularly and customarily purchased ingredients and supplies from at special bargained-for rates and quantities.  The continued economic relationship between HIF and its vendors would have resulted in an economic benefit to HIF.

118.   By virtue of his former position and duties at HIF, Defendant Marasco was aware of HIF's relationship with vendors, the supplies/ingredients HIF was contracting for, and the rates the vendors were providing to HIF, at all relevant times.

119.   By virtue of Defendant Sevillo and Does 1-25 misappropriating HIF's trade secrets, Defendant Sevillo and Does 1-25 were aware of HIF's relationship with vendors, the supplies/ingredients HIF was contracting for, and the rates the vendors were providing to HIF, at all relevant times.

120.   HIF is informed and believes, and thereon alleges, that Defendants intended to and did interfere with HIF's prospective economic relationships with its vendors by misappropriating HIF's confidential and proprietary Trade Secret information in an attempt to gain an unfair competitive advantage with HIF's vendors and to convince those vendors to do business with Defendant Sevillo as opposed to HIF.

121.   HIF is informed and believes and on that basis alleges that the economic relationships between HIF and its vendors were interfered with and disrupted by Defendants.  As a proximate result Defendants' actions as alleged above, HIF to date has suffered, and will continue to suffer, unless Defendants are

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    enjoined and awarded actual damages in an amount to be proven at trial.

2    122.    As a further proximate result of Defendants' wrongful acts, HIF is

3    entitled to a constructive trust in which Defendants, as constructive trustees hold

4    income, profits, commissions, fees, revenues, or other funds received as a result of

5    Defendants' wrongful acts alleged herein above for HIF's benefit.

6    123.    HIF has no adequate remedy at law for these injuries unless and until

7    Defendants are restrained from engaging in the wrongful acts described above in the

8    future because calculations of damages will be difficult and HIF will be compelled

9    to bring multiple suits to protect its interest.  HIF's damages are not easily

10    quantified but include, and are not limited to, HIF's lost profits or advantages on any

11    of Defendants' improper dealings in an amount to be proven at trial.  Further, HIF is

12    entitled to preliminary and permanent injunctions as prayed herein prohibiting

13    Defendants from engaging in acts of unfair competition, and/or misuse and

14    misappropriation of HIF's Trade Secrets and confidential information, as alleged

15    herein.

16    124.    The aforementioned acts of Defendants were willful, oppressive,

17    fraudulent, despicable, and in conscious disregard of the rights of HIF, and the

18    resulting harm to HIF.  HIF therefore is entitled to punitive and exemplary damages

19    in an amount according to proof at the time of trial.

20    ## VI.

21    ## (Breach of Fiduciary Duty and Duty of Loyalty)

22    ### Against Defendant Marasco

23    125.    Plaintiff re-alleges and incorporates by this reference the allegations set

24    forth in Paragraphs 1 through 124.

25    126.    As Executive Vice President at HIF, Defendant Marasco owed HIF a

26    fiduciary duty and duty of loyalty to act toward HIF fairly, honestly, in good faith,

27    with undivided loyalty to maintain the confidentiality of HIF's Trade Secrets, and to

28    refrain from any act, or omission to act, that was calculated or likely to: (a) injure or

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  harm HIF; (b) disclose HIF's Trade Secrets or confidential information to third

2  parties; and (c) misappropriate for his personal advantage or the advantage of any

3  third party HIF's Trade Secrets, confidential information, and/or proprietary

4  information.

5       127.   Following the end of his employment with HIF, Defendant Marasco

6  continued to owe HIF a fiduciary duty to HIF to refrain from any act or omission to

7  act, calculated to or likely to disclose to third parties HIF's Trade Secrets and

8  confidential information acquired during the course of Defendant Marasco's

9  employment with HIF, or misappropriate to his personal advantage or advantage of

10  a third party such Trade Secrets, confidential information, and/or proprietary

11  information.

12       128.   Defendant Marasco intentionally and knowingly breached his fiduciary

13  duty and duty of loyalty owed to HIF by engaging in the conduct alleged above and,

14  in particular, by misappropriating HIF's Trade Secrets to solicit vendor agreements

15  and supply chains from HIF's vendors for Defendants' benefit since Defendant

16  Marasco's employment ended.  As a direct and proximate result of Defendant

17  Marasco's breach of their fiduciary duty and duty of loyalty to HIF, HIF to date has

18  suffered and will continue to suffer unless Defendant Marasco is enjoined from

19  misappropriating HIF's Trade Secrets, and other confidential and/or proprietary

20  trade secrets.

21       129.   HIF has no adequate remedy at law for these injuries unless and until

22  Defendant is restrained from engaging in the wrongful acts described above in the

23  future because calculations of damages will be difficult and HIF will be compelled

24  to bring multiple suits to protect its interest.  HIF's damages are not easily

25  quantified but include, and are not limited to, HIF's lost profits or advantages on any

26  of Defendants' improper dealings in an amount to be proven at trial.  Further, HIF is

27  entitled to preliminary and permanent injunctions as prayed herein prohibiting

28  Defendant Marasco from engaging in acts for misuse and misappropriation of HIF's

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

Trade Secrets and confidential information, as alleged herein.

130.   In committing the breach of fiduciary duties as described above, Defendant Marasco is guilty of malice and oppression in that he secretly misappropriated HIF's Trade Secrets and confidential and/or proprietary information.  Further, Defendant Marasco is guilty of malice and oppression in that he misappropriated such information for the purposes of allowing Defendant Sevillo to attempt to induce HIF's vendors to do business with it at the expense and harm to HIF and HIF's goodwill with its clients and vendors.  In doing the acts alleged above, Defendant Marasco has acted with conscious disregard for HIF's rights and his own duties to HIF, thereby warranting an ward of punitive damages, in an amount appropriate to punish Defendant Marasco and deter others from similar misconduct.

## VII.

### (Breach of Fiduciary Duty and Duty of Care)

### Against Defendant Marasco

131.   Plaintiff re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 130.

132.   As Executive Vice President at HIF, Defendant Marasco owed HIF a fiduciary duty and duty of care for the utmost interest of HIF.  As part of his duty of care, Defendant Marasco was to refrain from any act, or omission to act, that was calculated or likely to injure or harm HIF.

133.   As alleged above, Defendant was charged with running and operating HIF after its owner and president took a leave of sabbatical.

134.   While managing HIF, Defendant Marasco drastically and arbitrarily cut production output well below the level identified to at least allow HIF to break even.  As alleged above, on most days HIF was producing only one-half to two-thirds of the amount required for it to offset its labor, overhead, and production costs.  Defendant Marasco took the affirmative action of ordering the reduction in

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

1  production despite it being against the best interest of HIF.  Defendant Marasco

2  knew the minimum production threshold, yet he took affirmative steps to cut

3  production resulting in economic losses to HIF.

4      135.   Defendant Marasco was further tasked with implementing the costing

5  and financial modules of the ERP system that HIF was implementing.  Instead,

6  under his management and direction, the costing and financial modules were not

7  implemented correctly and were not fully-functional when Mr. Schenkel returned.

8      136.   Defendant Marasco further failed to exercise his duty of care as

9  expected of a president or corporate office in the same or similar circumstances in

10  the implementation of the part of the ERP costing module he did implement.  Rather

11  than connect the ERP system to the  new LASCOM PLM system for seamless data

12  transfer, HIF is informed and believes that under Defendant Marasco's direction the

13  costing figures were manually input into the ERP system.  Moreover, the figures

14  were arbitrary and exaggerated, and thus did not reflect the cost of goods that HIF

15  actually used to negotiate contracts.  As a result, using the new ERP system, HIF

16  was overbidding on contracts and suffered economic losses as alleged above.

17      137.   Defendant Marasco failed to the exercise his duty of care as would an

18  President or Executive Vice President would do under the same or similar

19  circumstances.

20      138.   As a direct and proximate result of Defendant Marasco's breach of

21  fiduciary duty, HIF to date has suffered and continues to suffer actual damages in an

22  amount to be proven at trial.

23                          **VIII.**

24                    **(Unjust Enrichment)**

25        **Against Defendant Marasco, Sevillo, and Does 1-25**

26      139.   Plaintiff re-alleges and incorporates by this reference the allegations set

27  forth in Paragraphs 1 through 138.

28      140.   HIF is informed and believes and based thereon alleges that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND
DAMAGES, AND DEMAND FOR JURY TRIAL

Defendants' actions in intentionally misappropriating and using HIF's Trade Secrets as alleged above, to satisfy their greed and for their own personal gain constitute circumstances wherein it would be manifestly unjust, grossly unfair, and unconscionable to allow Defendants to retain such Trade Secrets for Defendants' own use and any proceeds derived from the use. To allow Defendants' to retain such Trade Secrets and any proceeds derived from the use thereof would unjustly enrich them at HIF's expense.

## IX.

### (Preliminary Injunctive Relief)

**Against Defendant Marasco, Sevillo, and Does 1-25**

141.   Plaintiff re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 140.

142.   Plaintiff has demonstrated, and the evidence to be presented at a hearing and/or trial will show, that Plaintiff has a likelihood of success on the merits of one or more of their claims set forth in this Complaint.

143.   The Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(A), and the California Uniform Trade Secrets Act, California Civil Code § 3426.2, both authorize and provide an independent basis for the preliminary injunctive relief sought by Plaintiff.

144.   Plaintiff will be irreparably harmed without preliminary injunctive relief that restores the status quo ante between Plaintiff and Defendants before Defendants committed one or more wrongful acts described in this Complaint.

145.   A balancing of the equities favors the entry of preliminary injunctive relief upon a hearing before the Court, in favor of Plaintiff. Without the entry of such relief, Plaintiff will suffer a greater hardship than Defendants will suffer if such relief was entered.

146.   Plaintiff has no adequate remedy at law.

147.   It is in the public interest that confidential Trade Secret, confidential,

31

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    and/or proprietary information remain protected rather than the alternative of

2    unabated breaches of confidentiality and non-disclosure agreements, and rampant

3    disclosure of confidential Trade Secret information to confer unfair business

4    advantages through misappropriation of such information.

5    **PRAYER FOR RELIEF**

6    WHEREFORE, for the wrongful acts of Defendants complained of in the

7    foregoing causes of action, Plaintiff respectfully requests the following relief:

8    A.    Judgement in Plaintiff's favor and against all Defendants;

9    B.    Preliminary and permanent injunctive relief, including a preliminary

10    injunction, prohibiting Defendants from:

11      a.    any further possession, disclosure, and/or use of Plaintiff's Trade

12    Secrets, confidential, and/or proprietary information;

13      b.    revealing or disclosing HIF's Trade Secrets, any confidential

14    information, and/or proprietary information to any person or entity for any reason or

15    purpose whatsoever, or making use of such information for Defendants' benefit or

16    for the benefit of any other person or entity;

17      c.    engaging in unlawful, unfair, and fraudulent business practices

18    including intentional interference with HIF's business relationships and contracts

19    with its vendors; and

20      d.    profiting or benefiting from their wrongful conduct;

21    C.    An order that Defendants return any and all confidential and/or trade

22    secret information of Plaintiff, and an order prohibiting any further use or benefit

23    from the use of said information;

24    D.    An order that Defendants inform HIF and the Court of all vendors and

25    clients of HIF that Defendants contacted using HIF's Trade Secrets;

26    E.    An award of general, special, consequential, and compensatory

27    damages to Plaintiff in an amount to be determined at a hearing and/or trial

28    including, but not limited to, all amounts Defendants received for contracts or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

1    business transactions they entered into, solicited, procured, or negotiated while

2    using, utilizing, referencing or relying on HIF's Trade Secrets, as well as attorneys'

3    fees and costs;

4           F.     An order directing Defendants to disgorge all gross revenues and

5    profits that they or anyone acting in concert or participation with them received as a

6    result of their wrongful conduct, in an amount to be determined at trial;

7           H.     An award in favor of Plaintiff for its costs associated with this action,

8    including without limitation their attorneys' fees pursuant to the common law, the

9    Defend Trade Secrets Act, and the California Uniform Trade Secrets Act;

10          J.     An award of exemplary damages in an amount twice the total of the

11   damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C) and by

12   California Civil Code § 3426.3;

13          K.     An award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and

14   California Civil Code § 3426.4;

15          L.     Compensation to Plaintiff for any unjust enrichment enjoyed by

16   Defendants, including restitution of all revenues, gains, profits, and advantages

17   obtained by Defendants as a result of their wrongful and unlawful conduct, in an

18   amount to be determined at a hearing and/or trial;

19          M.     An award of pre-judgment and post-judgment interest as permitted by

20   law;

21          N.     An order imposing a constructive trust;

22          O.     An order that Defendant Marasco complies with the Marasco

23   Agreement;

24          P.     Declaratory relief against Defendant Marasco with regards to his

25   breaches of fiduciary duty to HIF;

26          Q.     Any such other legal and equitable relief as the Court deems

27   appropriate.

28   / / /

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury to the fullest extent as allowed by law.

DATED: May 21, 2020          JOHN S. POULOS
                             KATHERINE C. DEN BLEYKER
                             OMAR M. ANIFF
                             LEWIS BRISBOIS BISGAARD & SMITH LLP


                        By:   /s/ Omar M. Aniff
                              Katherine C. Den Bleyker
                              Omar M. Aniff
                              Attorneys for HALIBURTON
                              INTERNATIONAL FOODS, INC.

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES, AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW